GALVESTON, H. & S. A. RY. CO. v. REIN-
HART. (No. 5576.) *

(Court of Civil Appeals of Texas. San Antonio.
Jan. 10, 1916. Rehearing De-
nied Feb. 9, 1916.)

1. MASTER AND SERVANT ⟨⟩294—INJURIES TO
SERVANT—LIABILITY OF MASTER—ACTIONS—
PLEADING — SUFFICIENCY TO SUPPORT IN-
STRUCTIONS.

In a servant's action for injuries alleged to
have been caused by the negligence of two fellow
servants whose names were unknown, but who
were Mexicans, where there was no evidence of
negligence of any fellow servants except the
Mexicans, an instruction authorizing recovery
if the injury resulted from the negligence of
fellow servants, without limiting it to the neg-
ligence of the Mexicans, was not erroneous.

[Ed. Note.—For other cases, see Master and
Servant, Cent. Dig. §§ 1157, 1161–1167; Dec.
Dig. ⟨⟩294.]

2. APPEAL AND ERROR ⟨⟩1066 — HARMLESS
ERROR—INSTRUCTIONS.

In such case, where the verdict for the
plaintiff required a finding that the negligence
was that of the Mexican fellow servants and of
no others, the error, if any, in failing to follow
the pleading precisely, was harmless, the result
being unchanged by it.

[Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. § 4220; Dec. Dig. ⟨⟩1066.]

3. APPEAL AND ERROR ⟨⟩1058—HARMLESS
ERROR—EXCLUSION OF EVIDENCE—SUBSE-
QUENT ADMISSION.

A party cannot complain of the exclusion
of testimony which was thereafter admitted.

[Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. §§ 4195, 4200–4204, 4206;
Dec. Dig. ⟨⟩1058.]

4. EVIDENCE ⟨⟩317—ADMISSIBILITY—HEAR-
SAY EVIDENCE.

In explaining the absence of a material wit-
ness, testimony of defendant's agent that his
subagent telephoned that he had located the wit-
ness, who refused to attend, was inadmissible
because hearsay.

[Ed. Note.—For other cases, see Evidence,
Cent. Dig. §§ 1174–1192; Dec. Dig. ⟨⟩317.]

5. EVIDENCE ⟨⟩318—ADMISSIBILITY—STATE-
MENTS OUT OF COURT.

Where a material witness is absent and
his absence is not satisfactorily explained, it
is not error to exclude his sworn statement made
before the trial.

[Ed. Note.—For other cases, see Evidence,
Cent. Dig. §§ 1193–1200; Dec. Dig. ⟨⟩318.]

6. MASTER AND SERVANT ⟨⟩279—INJURIES TO
SERVANT—LIABILITY OF MASTER—ACTS OF
FELLOW SERVANTS — EVIDENCE — SUFFI-
CIENCY.

Evidence of plaintiff held to show that his
injuries proximately resulted from the negli-
gent act of his fellow servants, so as to support
recovery from the master.

[Ed. Note.—For other cases, see Master and
Servant, Cent. Dig. §§ 973–975, 978–980; Dec.
Dig. ⟨⟩279.]

7. DAMAGES ⟨⟩132 — PERSONAL INJURIES —
EXCESSIVE DAMAGES.

Where, prior to his injuries, plaintiff was
in good health and had worked as a carpenter,
doing heavy work for many years, and the
evidence showed that his fall caused severe
bruises on the head and shoulders, that he
was in the hospital for 2½ months, and had been
unable to work for over a year and a half, that
his back was weak, that his blood pressure was
exceedingly high, that his heart skipped beats,
and a physician testified that the injuries were
done to his nervous system by the fall, and that
he could never do hard work because of danger
of heart failure, and that his life would be
materially shortened, a verdict in his favor of
$10,000 was not excessive.

[Ed. Note.—For other cases, see Damages,
Cent. Dig. §§ 372–385, 396; Dec. Dig. ⟨⟩
132.]

Appeal from District Court, Bexar Coun-
ty; W. F. Ezell, Judge.

Action by R. Reinhart against the Galves-
ton, Harrisburg & San Antonio Railway Com-
pany. From a judgment for plaintiff, de-
fendant appeals. Affirmed.

Baker, Botts, Parker & Garwood, of Hous-
ton, Templeton, Brooks, Napier & Ogden, and
Ed W. Smith, all of San Antonio, for appel-
lant. Engelking & James, of San Antonio,
for appellee.

MOURSUND, J. Appellee sued appellant
for damages on account of personal injuries,
alleged to have been sustained by him while
he was working for defendant as a carpenter
in its roundhouse at San Antonio. It was
alleged that, at the time of the accident, the
crew of which plaintiff was a member was
engaged in the work of placing a heavy beam
up under the roof of the roundhouse; that
the end of the beam where they were work-
ing at the time had been placed on a scaffold
underneath the roof; that a screw jack had
been set on the scaffold under the beam;
that plaintiff was sitting astride the scaf-
fold and was raising the beam into place by
turning the jack with a lever; that while he
was engaged in such work two of his fellow
servants, whose names were unknown to
plaintiff, but who were Mexicans, were di-
rected to lift the beams by prying with a
crowbar, but they negligently gave a sudden
jerk with such crowbar so that the beams
resting on the jack were suddenly elevated
and their weight removed from the head of
the jack on which plaintiff was pulling; that
when the weight of said beams was so remov-
ed from the head of said jack plaintiff's
weight on the jack lever caused it to revolve
quickly, and, as plaintiff was without sup-
port, he lost his balance and fell from the
scaffold. In paragraph 6 plaintiff alleged:

"The said two Mexican servants were negli-
gent in suddenly and with a jerk raising the
said beams by means of the crowbar so that their
weight and resistance was taken from the jack,
and plaintiff thereby caused to·lose his balance
on the scaffold and fall, as aforesaid."

In paragraph 7 plaintiff alleged that the
defendant and some of plaintiff's fellow serv-
ants, whose names he cannot give, were neg-
ligent in suddenly removing the support and
position of firmness which the said jack had
under the said beam, and thereby caused the
lever with which plaintiff was operating and
holding himself to be pulled out of the jack
and the plaintiff to be thrown from the scaf-
fold.

---

The railway company admitted the happening of the accident, but denied that it was caused by the alleged negligence of two of plaintiff's Mexican fellow servants in prying on and jerking the beam with the bar. It alleged that plaintiff placed the jack on the scaffold under the beam and operated it to suit himself, and that his fall was caused by his failure to put the lever far enough into the hole in the jack or in so placing the same that it slipped out or in the manner in which he pulled on the lever, or in some other way unknown to defendant. It further pleaded that in acting as he did appellee was guilty of contributory negligence, and that he assumed the risk.

The trial resulted in a verdict and judgment for $10,000.

[1, 2] The second paragraph of the charge reads:

"If you find from the evidence that while plaintiff was sitting on the scaffold and was raising the beam into position with a screw jack, one or more of his fellow servants was prizing on the beam with a bar, and if you further find that, while plaintiff was so operating the jack, his said fellow servants suddenly jerked the beam with the bar and that this released the weight on the jack and caused plaintiff to lose his balance and fall, and if you further find that the jerking of the beam with the bar, if it was so jerked, was negligence, and that such negligence was the direct and proximate cause of plaintiff falling, and if you further find that plaintiff sustained in such fall any of the injuries alleged in his petition, then you should return a verdict for plaintiff."

Appellant contends that this portion of the charge was erroneous because it fails to require that two of appellee's fellow servants, who were Mexicans, must have been prizing on the beam and suddenly jerked the same, etc., as alleged in the petition. The contention is that the evidence shows that two of appellee's fellow servants, Haak and Mathewson, are not Mexicans, and shows and tends to show that Mathewson is the man who was handling the bar and prizing the beam, and that neither of the Mexicans handled the bar or jerked the beam with the bar, and therefore the jury, under the charge, might have found for plaintiff upon the negligence of Mathewson instead of that of the two Mexicans. This contention finds no support in the testimony. Plaintiff testified unequivocally that the two Mexicans were prizing with the crowbar at the time he was injured. Every witness for defendant testified positively that no one was using the crowbar at that time. Haak and Mathewson testified that prior to this time Mathewson had tried to prize the beam over, but he could not do it, so he took the bar out and they used the jack again. Haak testified that at the time of the accident Mathewson was standing on the ground, holding the rope; that no one at that time was using the crowbar. Mathewson testified that at the time plaintiff fell, he (Mathewson) was standing on the running board of the engine, and was not using the bar while plaintiff was using the jack, nor did he think any one else was.

Appellee contends that in paragraph 7 he imputed the act of negligence to "some of plaintiff's fellow servants, whose names he cannot give," and that said allegation was sufficient to authorize the charge. We think there is no merit in that contention, for it appears that in paragraph 7 the plaintiff undertook to allege a different act of negligence from that alleged in paragraph 6. The one alleged in paragraph 6 was submitted, and as the two fellow servants were described as Mexicans, for the purpose of identifying them, they being the only two who were Mexicans and their names being unknown, the case is exactly in the same attitude as if the names of the two fellow servants alleged to have been negligent had been stated in the petition, but admitting that the court should have submitted the case just as it was pleaded, we are unable to see any probability that the failure to do so injured appellant. If the jury believed plaintiff and found there was negligence in jerking the beam with a bar, they must have found that the two Mexicans were handling the bar for plaintiff so testified, while the other witnesses testified positively that no one was working with the bar at that time. We therefore overrule the first assignment of error.

The second assignment complains of the failure to give a special charge requiring the jury to find that two Mexicans jerked the beam with a bar, or else plaintiff could not recover. This assignment is overruled on the ground that if error was committed in refusing to give it, such error is not one requiring a reversal. The reasons on which the holding is based are stated in discussing the first assignment.

[3, 4] M. H. Bonner, appellant's claim agent, after testifying that on December 6, 1913, he took the statement of Torres, one of the Mexicans present at the time plaintiff fell from the scaffold, testified further that he had been requested to locate Torres as a witness in the case, but did not know of his own knowledge where he was; that he made inquiry about a day or two before the 1st day of March, and learned where he was from other persons. He was not permitted to testify that he learned Torres was at his father's house, near San Angelo, Tex. The statement of facts shows that afterwards Bonner testified that the case went over for a special setting on March 22d, and he was told by attorneys for defendant to find out where Torres was, and arrange for his attendance. He testified further:

"According to the information I had at that time, I heard he had gone to San Angelo. As soon as I learned he had gone out there, I heard he had left there, and it was said he had gone to Laredo, and it was also reported he had joined the Mexican army. Feliciano Acosta is the man that was sent off to Laredo, Del Rio, Sonora, and west of Sonora for Torres; I had a telephone from him last night at Sonora, and

expect him to return to-night at 8:50. I have done everything in my power to get Torres here at this trial, but have been unable to do it."

He also testified that Acosta told him over the telephone that he had found Torres 25 miles west of Sonora, but he refused to come. This statement was excluded, upon objection that it was hearsay. Appellant's third and fourth assignments of error relate to the two rulings excluding testimony as to what Bonner had been told as to Torres' whereabouts. It is apparent that the very testimony covered by the first assignment was afterwards given, for the witness stated that his information at the time the case was first set for trial was that Torres was at San Angelo. Appellant does not show clearly upon what theory its contention is based that proof could be made of what Acosta, defendant's subagent, had done and that the witness whom he had located refused to attend the trial, by the hearsay statement of such subagent. We think the court did not err. Furthermore, this testimony could only be material on the issue whether Torres was absent by the procurement of defendant, and if the jury did not believe what Bonner said about his efforts to have Torres present, it is inconceivable that the unsworn statement of Acosta, an agent of Bonner, to the effect that he had found Torres 25 miles from Sonora and he refused to come, would have caused them to believe that Bonner was truthful concerning his efforts. Both assignments are overruled.

[5] By the fifth assignment complaint is made because the court excluded the sworn statement made by Torres on December 6, 1913. There is no merit in the assignment.

[6] The sixth and seventh assignments attack the sufficiency of the evidence to support the verdict. Plaintiff's testimony, which was believed by the jury, supports a finding that the beam was negligently jerked by means of a crowbar wielded by two Mexicans, and that such act was the proximate cause of plaintiff becoming overbalanced and falling from the scaffold. The assignments are overruled.

[7] Appellant contends that the verdict is excessive. The evidence shows that prior to appellee's fall he was in good health; that he had worked for appellant for many years doing carpenter work, which included lifting heavy planks and timber; that his fall caused severe bruises on his head and shoulders; that he was in the hospital for 2½ months; that he had not been able to work up to the time of the trial, a year and a half after his fall. He still has a tender spot in the small of his back, and is very weak in the back; besides, his blood pressure is exceedingly high and betokens a dangerous condition. His heart skips beats. This condition is attributed by him to his fall, and the testimony of Dr. Goeth warrants a finding that such condition was brought about by injuries to his nervous system sustained on account of the fall. Dr. Goeth expressed the opinion that on account of the condition of appellee's heart he would never be able to do hard work, because of danger of heart failure, and that his life would be materially shortened. The verdict is high, but we conclude that it is not so high that the amount itself manifests passion or prejudice.

The judgment is affirmed.

---

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Application for writ of error pending in Supreme Court.